In re Anthony J. CZEPIGA, Debtor.

Karen S. NASH, Plaintiff,

v.

Anthony J. CZEPIGA, Defendant.

Bankruptcy No. 205-5-82-00646.
Adv. No. 205-5-82-0381.

United States Bankruptcy Court,
D. Connecticut.

March 8, 1983.

John J. Kennedy, Jr., Donald G. Walsh, P.C., New Haven, Conn., for plaintiff.

John D. Ronshagen, West Haven, Conn., for defendant.

MEMORANDUM AND DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

In this proceeding, the plaintiff, Karen S. Nash, the former attorney for Mary Czepi-

ga, the defendant's former wife, seeks, *inter alia,* a determination that a debt owed to her by the defendant is nondischargeable because "said debt is in the nature of alimony, maintenance or support to the defendant's former wife, Mary Pat Czepiga." [1]

### I.

On May 11, 1979, the Connecticut Superior Court for the Judicial District of New Haven at New Haven entered a judgment dissolving the marriage between the defendant and Mary Czepiga.[2] In pertinent part, the judgment provided that the custody of their child be committed to Mary Czepiga and that the defendant pay Mary Czepiga $34.00 per week alimony and $34.00 per week for child support. The judgment made no provision for Mary Czepiga's attorney's fee incurred in connection with the dissolution. The alimony payments were eventually reduced to $1.00 per year, and on August 11, 1980, they were terminated.

The defendant instituted custody proceedings during August 1981. On January 1, 1982, pursuant to a stipulated agreement between the defendant and Mary Czepiga, the Connecticut Superior Court ordered that the previous judgment, awarding permanent custody to Mary Czepiga, should be reopened and modified to award permanent custody of the child to the defendant. The court further ordered, pursuant to the agreement between the parties, that the defendant pay Mary Czepiga's "attorney's fee of $1,500.00 within ninety days and that he will pay her $250.00 for costs and expenses within three weeks." Sixteen hundred sixty dollars of that amount remains unpaid. No memorandum of decision accompanied the modification of judgment, and, if any hearing preceded the court ordered modification, the transcript thereof was not offered here.

### II.

The plaintiff's principal argument in support of nondischargeability is based on the claim that *In re Spong*[3] compels the bankruptcy court to look to state law and that the state law, applicable in this proceeding, is consistent with her claim that the award of the attorney's fee was in the nature of alimony, maintenance, or support. More specifically, the plaintiff refers to Conn. Gen.Stat. § 46b–62, Attorney's Fees and § 46b–82, Alimony. Section 46b–62 states in pertinent part "[T]he court [in certain domestic actions] may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b–82." Section 46b–82, in turn, lists various factors for the superior court to consider in determining whether alimony should be awarded.[4] The plaintiff accordingly contends that "under Connecticut law an award of attorney's fees is clearly in the 'nature of alimony, maintenance or support' as the identical standards are employed in awarding them."[5]

### III.

The controlling statute in this proceeding is 11 U.S.C. § 523(a)(5), which provides in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b–81, and in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment.

1. Complaint at ¶ 6.

2. *Anthony Czepiga v. Mary Pat Czepiga,* Docket No. 164368.

3. 661 F.2d 6 (2d Cir.1981).

4. Conn.Gen.Stat. § 46b–82 states in pertinent part:
In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b–51, shall consider the length of the marriage, the causes

5. Plaintiff's Memorandum of Law.at p. 4.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony, maintenance, or support;* (emphasis added)

Courts have generally recognized that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law." S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865. *See In re Spong, supra,* 661 F.2d at 8–9. In making their determination, bankruptcy courts have examined a number of factors. As stated in *In re Petoske:*[6]

Although no one factor is controlling, these factors include: the nature of the obligation assumed, its location in the separation agreement, whether a lump sum or terminable periodic payments were provided for, the length of the marriage, whether children resulted which had to be provided for, the relative earning power of the spouses, the adequacy of support absent the debt assumption, and of course, the parties' negotiations and understanding of the provision. (citations omitted)

The ultimate federal question as to what constitutes "alimony, maintenance, and support," however, requires reference to state law. *In re Spong, supra* at 8–9. In *Spong,* as here, an issue before the court was whether the debtor's obligation to pay his former spouse's attorney's fee was in the nature of alimony, maintenance and support.[7] The court noted that under New York law, a husband has the duty "to support his wife by providing her with the necessaries of life according to his station." *Id.* The court then stated: "An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law." *Id.* After examining the nature of the debtor's obligation, the court in *Spong* concluded that it was within the bankruptcy definition of alimony, maintenance, and support.

The award of an allowance of an attorney's fee is governed in Connecticut by Conn.Gen.Stat. § 46b–62.[8] That section does not provide for alimony but requires the court to weigh the financial condition of the parties and other factors considered in awarding alimony when determining whether an award of an attorney's fee is appropriate. What support the plaintiff here may derive from the relationship between Conn.Gen.Stat. § 46b–62 and 46b–82 is insufficient when set against other factors relevant to the court's analysis.

An award of an attorney's fee frequently, as in *Spong,* turns upon the financial inability of one of the parties to prosecute or defend a matrimonial action. The financial status of a spouse is also a factor in determining whether alimony should be awarded in state court proceedings. As such, the need for support and the need for financial assistance in prosecuting or defending a matrimonial action are commonly recognized in state court decrees and treated as awards in the nature of alimony, maintenance and support by bankruptcy courts.[9]

Here, however, it cannot be said that Mary Czepiga had a demonstrated need for support. At the time she and the defendant entered into the stipulation regarding the attorney's fee, all alimony payments had already been terminated. Furthermore, Mary Czepiga was earning at least as

---

6. 16 B.R. 412, 413–14 (Bkrtcy.E.D.N.Y.1982).

7. In *Spong,* the court also considered whether a debt not payable to the debtor's former spouse could be nondischargeable under 11 U.S.C. § 523(a)(5) and answered the question posed in the affirmative.

8. It appears that such fees have not traditionally been considered necessaries under Connecticut law. *See Cooke v. Newell,* 40 Conn. 596, 598 (1874).

9. *See* cases cited in *In re Spong, supra* at 9.

much as the defendant, and the custody of their only child was by the same modification being committed to him. In addition it should be noted there was little evidence as to the intent of the parties when they entered a stipulation. The defendant, however, testified that he reluctantly agreed to the attorney's fee to assure that he would receive custody of his child.

In view of the foregoing, I find that the plaintiff has not sustained her burden of proving that the award of an attorney's fee was actually in the nature of alimony, maintenance or support. Accordingly, judgment should be, and hereby is, entered in favor of the defendant.