In re Danny Ray CRAWFORD, Debtor.

Kathy Salerno, Plaintiff,

v.

Danny Ray Crawford, Defendant.

Bankruptcy No. 98–43414M.
Adversary No. 98–4179.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

July 26, 1999.

Mary Jane Pruniski, Little Rock, AR, for Plaintiff.

Dale Finley, Russellville, AR, for Debtor/Defendant.

Randy Rice, Little Rock, AR, trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

Kathy Salerno initiated this adversary proceeding against Danny Ray Crawford ("Debtor"), her former spouse, to determine the dischargeability of certain debts allegedly arising out of a property settlement related to the parties' divorce. After a hearing on April 16, 1999, the Court took the matter under advisement.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### FACTS

Most of the events relevant to a determination of the issues in this case occurred before the Debtor filed his chapter 7 bankruptcy petition on July 15, 1998. Ms. Salerno and the Debtor were divorced on August 21, 1996, by decree of the Chancery Court of Perry County, Arkansas. In the decree, the court ordered the Debtor to take possession of two items of personal property, a 1982 Pace–Arrow motor home and a 1994 Dodge pickup truck, both of which were financed in Salerno's name. The court also required the Debtor to refinance both vehicles, to remove Salerno from the obligation, and to maintain insurance on the vehicles. Additionally, the court ordered that "[e]ach of the parties shall hold the other party free, clear and harmless for any indebtedness incurred since their separation and on the property received in this agreement." (Pl's Ex. 1.)

The Debtor took possession of the two vehicles but failed to refinance them. At some point in time not evident from the record, he became delinquent on the monthly payments for the vehicles. In February 1997, Salerno obtained a bank loan for $2000.00, which she then used to extend a personal loan to the Debtor to defray the arrearage on the two vehicles. At some later unspecified time, Salerno herself began making payments on the vehicles when it became clear that the Debtor had again failed to do so.

Subsequently, Salerno obtained a court order on June 4, 1997, directing the Debtor to surrender the two vehicles to her and to pay Salerno the sum of $3909.26 that she had previously paid on the vehicles while they were in the Debtor's possession. This sum did not include the $2000.00 personal loan extended to the Debtor. After she took possession, Salerno allowed the truck to be repossessed and currently owes a deficiency of $6183.47. Salerno refinanced her home to cover the payoff of approximately $8000.00 on the motor home. As a result of the refinancing, Salerno's house payment increased by about $150.00 a month.

On September 17, 1997, the Debtor was held in contempt of court for nonpayment of the $3909.26 he was ordered to pay on June 4. The court again ordered the Debtor to pay this sum[1] plus $500.00 in

---

1. The sum of $3909.26 was apparently reduced by the chancery court to $3709.26 after

attorney's fees incurred by Salerno in bringing the contempt action. When the Debtor did not comply, he was incarcerated for six months. The Debtor was released from confinement on the condition that he pay Salerno $300.00 a month by the first of every month beginning May 1, 1998, until the sum of $4209.26 was paid in full.

The Debtor did not make the court-ordered monthly payments, nor did he repay Salerno for the $2000.00 loan of February 1997. The Debtor filed his bankruptcy petition on July 15, 1998. He treats the two debts owed to Salerno as unsecured, nonpriority obligations.

At the hearing, Salerno testified that she is a Perry County Revenue Agent earning a net income of approximately $1300.00 a month. She provided the Court with a list of her basic living expenses, which totaled $1509.00 and included a house payment of $590.00 a month. These expenses did not include the cost of clothing, payments on the deficiency for the pickup truck, or payments on a debt of $850.00 owed to her attorney for his efforts in collecting the initial sum of $3909.26.

The Debtor testified that he is a truck driver and has worked at his current job for ten months. He estimated his take-home pay to be $350.00 a week or $1400.00 a month. His monthly rent is $300.00, and bills for utilities and gasoline total $495.00. If the Debtor incurs other monthly expenses, he did not testify to them or introduce exhibits demonstrating their existence and amounts. He conceded that he can reside rent-free in his mother's home if he so chooses.

## DISCUSSION

Salerno's complaint alleges that the $3709.26 debt for car payments and insurance, the $500.00 in attorneys fees expended to enforce the court's orders, and the $2000.00 personal loan are nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

the Debtor paid $200.00 toward the debt.

The Debtor contends that because the divorce decree did not specifically address the attorneys fees and personal loan, these debts are not governed by section 523(a)(15). The Debtor makes no argument as to why the $3709.26 debt should not be discharged. Each debt will be discussed separately below.

The Bankruptcy Code provides that an individual debtor will not be discharged from any debt

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15)(A) & (B)(1994).

In short, section 523(a)(15) excepts from discharge property settlement debts arising out of divorce proceedings other than alimony, maintenance or support obligations that are nondischargeable under section 523(a)(5). *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 54 (8th Cir. BAP 1998). Sections 523(a)(15)(A) and (B) provide two exceptions to the general provision that property settlement debts are nondischargeable.

In a cause of action to except non-support divorce debt from discharge under section 523(a)(15), the nondebtor spouse must satisfy the initial burden of proof. The nondebtor spouse must show that the

debt to be excepted is one incurred in connection with a divorce and is in the nature of a property settlement rather than a debt for maintenance or support. *Strayer v. Strayer (In re Strayer)*, 228 B.R. 211, 214 (Bankr.S.D.Ind.1996) (citing *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *Florio v. Florio (In re Florio)*, 187 B.R. 654 (Bankr.W.D.Mo. 1995); *DuBroff v. Steingesser (In re Steingesser)*, 602 F.2d 36 (2d Cir.1979); *Deems v. Schauer*, 470 F.Supp. 255 (D.N.D.1979); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648 (Bankr.W.D.Mo.1995)); *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr.N.D.Ohio 1996) (citing *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995)).

■ Nonsupport divorce debt may be excepted from discharge pursuant to section 523(a)(15) despite the fact that the debt is payable to a third party, rather than the former spouse. *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 202–03 (6th Cir. BAP 1998) (finding that a debtor's nonsupport divorce obligation may satisfy the statute if it is payable either to a third party or directly to the nondebtor spouse); *McCracken v. LaRue (In re McCracken)*, 204 B.R. 531, 534–35 (Bankr.E.D.Tenn. 1997) (observing that a "hold harmless" agreement obligates a debtor to indemnify or reimburse former a spouse if the debtor fails to make required payments to third parties) (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983)); *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 673–74 (Bankr.E.D.Ky.1996) (same).

■ A divorce decree apportioning third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event the obligee is required to pay the debt. *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr. E.D.Ark.1996) (holding under Arkansas law that when debtor's obligations to third parties under divorce decree were paid by former spouse, debtor became obligated to reimburse former spouse). Furthermore, a hold harmless agreement in a divorce decree imposes liability upon the obligor for all consequences of his failure to pay. *Linet v. Azia (In re Azia)*, 159 B.R. 71, 74–75 (Bankr.D.Mass.1993). The fact that one spouse has refinanced or otherwise paid a divorce-decree debt allocated to the other spouse, who later files a bankruptcy petition, does not affect dischargeability of the obligation in bankruptcy. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 327 (Bankr.N.D.Ohio 1996) (citing *Williams v. Williams (In re Williams)*, 189 B.R. 678, 680 (Bankr.N.D.Ohio 1995) (citing *Robinson v. Robinson (In re Robinson)*, 921 F.2d 252, 253 (10th Cir.1990) (agreeing with district court that the status of the underlying debt has no effect on the original obligation to hold one's spouse harmless))).

■ In the instant case, Salerno has satisfied her burden to prove that the debts she seeks to except from discharge are nonsupport divorce obligations. First, as to the $3709.26 obligation, the decree introduced into evidence clearly demonstrates a division of marital assets and an allocation of marital debt between the two parties that is not in the nature of support or alimony. The Chancellor ordered the Debtor to take possession of the motor home and pick-up truck, to refinance the two vehicles in his name, to pay insurance costs, and to hold Salerno harmless for payment of future debts incurred in connection with these two vehicles. The Chancellor methodically apportioned the parties' assets and debt in a decree that dealt only with property settlement provisions.

The debt for $3709.26 that the Debtor has repeatedly been ordered to pay is directly connected to the division of marital property and allocation of marital debt in the divorce decree. The sum represents car payments and insurance the Debtor was liable for under the divorce decree but failed to pay. The fact that Salerno paid this amount in no way affects the nondischargeability of the debt under the statute,

since the Debtor agreed to hold Salerno harmless for this debt. Under the decree, the Debtor has indemnified and must reimburse Salerno, who stands in the shoes of the third party creditors whom she has paid. As a nonsupport divorce debt, the sum is nondischargeable as to Salerno unless one of the two statutory exceptions applies.

As to the $2000.00 personal loan, the undisputed testimony was that Salerno lent this sum to the Debtor for the express purpose of curing the arrearage in car and insurance payments incurred by the Debtor while the vehicles were in the Debtor's possession, pursuant to the divorce decree. The only difference between this loan and the sum of $3609.26 is that Salerno lent the $2000.00 to the Debtor rather than paying the third parties directly. In the decree, the Chancellor ordered the Debtor to hold Salerno harmless for the indebtedness without regard to who is entitled to payment. This "hold harmless" clause imposed liability upon the Debtor for all consequences of his failure to pay. One of the consequences was the obligation to indemnify Salerno for any sums she paid on his behalf, even if she paid them directly to the Debtor. The status of the underlying debt, that is, whether the debt is owed to third parties or to Salerno, is of no effect as to Salerno's right to indemnification.

Furthermore, for dischargeability purposes, the Court sees no reason to distinguish between the $2000.00 personal loan and the $3709.26 in payments to third parties. Both debts to Salerno stem directly from the Debtor's obligations to her under the divorce decree. Thus, the $2000.00 loan is nondischargeable unless one of the two statutory exceptions applies.

■ Salerno also seeks an exception to discharge for $500.00 in attorneys fees that Salerno incurred in enforcing the divorce decree and that the Debtor was ordered to pay. Generally, the dischargeable or nondischargeable nature of ancillary divorce decree obligations, such as attorney fees, follows the classification of the primary obligation. *Sinewitz v. Sinewitz (In re Sinewitz)*, 166 B.R. 786, 788 (Bankr. D.Mass.1994) (citing *DuBroff v. Steingesser (In re Steingesser)*, 602 F.2d 36 (2d Cir.1979); *Deems v. Schauer*, 470 F.Supp. 255 (D.N.D.1979); *LaFleur v. LaFleur (In re LaFleur)*, 11 B.R. 26, 29 (Bankr. D.Mass.1981); *Bell v. Bell (In re Bell)*, 5 B.R. 653 (Bankr.W.D.Okla.1980); *Goldman v. Roderiques*, 370 Mass. 435, 349 N.E.2d 335 (1976)).

■ Attorneys fees incurred for services related to nondischargeable alimony or support are also nondischargeable. 11 U.S.C. § 523(a)(5)(1994); *Linet v. Azia*, 159 B.R. 71, 75–76 (Bankr.D.Mass.1993) (citing *Balvich v. Balvich (In re Balvich)*, 135 B.R. 323, 327 (N.D.Ind.1991); *Rudicil v. Rudicil (In re Rudicil)*, 125 B.R. 747, 751 (Bankr.N.D.Ohio 1991); *In re Wisniewski*, 109 B.R. 926, 930 (Bankr. E.D.Wis.1990); *Burch v. Burch (In re Burch)*, 100 B.R. 585, 590 (Bankr.M.D.Fla. 1989)). Accordingly, attorneys fees are nondischargeable if incurred for collecting payments that themselves are nondischargeable. *Sinewitz v. Sinewitz (In re Sinewitz)*, 166 B.R. 786, 788 (Bankr. D.Mass.1994).

While these cases specifically construe section 523(a)(5), the same reasoning would apply to section 523(a)(15). If the primary obligation, a property settlement debt, is nondischargeable, then ancillary debt such as attorneys fees to enforce the primary obligation are also nondischargeable. Therefore, the sum of $500.00 in attorneys fees incurred by Salerno to enforce the nondischargeable primary obligation is also excepted from discharge unless one of the statutory exceptions applies.

■ The two statutory exceptions to the nondischargeability of nonsupport divorce debt require a showing that the Debtor does not have the ability to pay the debt or that the benefit to the Debtor of discharging the debt outweighs the detriment to the former spouse. 11 U.S.C.

§ 523(a)(15)(A) & (B)(1994). The majority view is that the burden of proving either exception rests with the Debtor. *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 56 (8th Cir. BAP 1998) (citing *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 139–40 (9th Cir. BAP 1997); *Johnson v. Rappleye (In re Rappleye)*, 210 B.R. 336, 340 (Bankr.W.D.Mo.1997); *Williams v. Williams (In re Williams)*, 210 B.R. 344, 346 (Bankr.D.Neb.1997); *Wellner v. Clark (In re Clark)*, 207 B.R. 651, 655–56 (Bankr. E.D.Mo.1997); *Scigo v. Scigo (In re Scigo)*, 208 B.R. 470, 473 (Bankr.D.Neb.1997); *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr.N.D.Ohio 1997); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312, 316 (Bankr.W.D.Ark.1996); *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr.E.D.Ark.1996); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr. S.D.Cal.1996)).

Assigning the burden of proof to the Debtor, the Court finds he did not satisfy his burden as to either exception. Although Salerno gave extensive testimony about her financial condition, the Debtor did not. The evidence is that the Debtor has a steady job earning approximately the same wages as Salerno. The picture of his monthly expenses was incomplete, as he estimated only his disbursements for rent, utilities and gasoline. No evidence was adduced that related to the Debtor's expenditures for food and other necessities not mentioned in his testimony.

Based on this record, the evidence does not show either that the Debtor lacks the ability to pay the nonsupport divorce debt or that the benefit to the Debtor of discharging the debt outweighs the detriment of the discharge to Salerno. Therefore, the debts to Salerno in the total sum of $6209.26 are excepted from discharge in accordance with 11 U.S.C. § 523(a)(15).

IT IS SO ORDERED.